UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MILORAD RAICEVIC | § | |
| | § | |
| Plaintiff | § | CIVIL ACTION NO.: 3:15-cv-327 |
| | § | |
| *Versus* | § | |
| | § | |
| WOOD GROUP PSN, INC., ET AL. | § | **TRIAL BY JURY DEMANDED** |
| | § | |
| Defendants | § | |

## JOINT PRETRIAL ORDER

### Appearance of Counsel

COUNSEL FOR PLAINTIFF MILORAD RAICEVIC:

> Mr. John Sheppard
> Texas Bar No.: 24051331
> Fed Id.: 635193
> jsheppard@morrowsheppard.com
> Mr. Nicholas Morrow
> State Bar No. 24051088
> Fed Bar No. 611443
> Morrow & Sheppard LLP
> 3701 Kirby Drive, Suite 840
> Houston, Texas 77098
> T: 713-489-1206
> F: 713-893-8370

COUNSEL FOR DEFENDANT SHAMROCK MANAGEMENT LLC

> Mr. James Tompkins
> jtompkins@gallowaylawfirm.com
> Branch Sheppard
> bsheppard@gallowaylawfirm.com
> Galloway, Johnson, Tompkins, Burr & Smith
> 1301 McKinney Suite 1400
> Houston, Texas 77010
> T: 713-599-0700
> F: 713-599-0777

COUNSEL FOR DEFENDANT WOOD GROUP PSN, INC.

Mr. Bradley DeLuca
bdeluca@jdkglaw.com
Brigid Ashcraft
bashcraft@jdglaw.com
Johnson DeLuca Kurisky & Gould, P.C.
1221 Lamar, Suite 1000
Houston, Texas 77010
T: 713-652-2525
F: 713-652-5130

COUNSEL FOR DEFENDANT FIELDWOOD ENERGY LLC

Randy Donato
rdonato@donatominxbrown.com
Ryan Marlatt
rmarlatt@donatominxbrown.com
3200 Southwest Freeway
Suite 2300
Houston, Texas 77027
T: 713-403-5432
F: 713-877-1138

COUNSEL FOR DEFENDANT ISLAND OPERATING COMPANY LLC

Mr. Hal J. Broussard
hal@bandkay.com
Broussard & Kay LLC
909 Garber Rd.
Post Office Box 189
Broussard, LA 70518
T: 337-232-1666
F: 337-330-4766

## <u>Statement of the Case</u>

This is a personal injury case involving an alleged slip and fall in the early morning hours of December 1, 2014, on an offshore platform off the coast of Louisiana. The parties are Mr. Milorad Raicevic, the Plaintiff, who at the time of the incident was an employee of Waukesha Pearce Industries, Inc. Mr. Raicevic claims he slipped on oil and liquid that had allegedly been leaking for months while responding to an alarm that went off in the middle of the night to which he was required to respond. Mr. Raicevic claims he sustained serious injuries, including injuries to his back. The Defendants are Fieldwood Energy, LLC, the owner of the platform, and Wood Group PSN, Inc., Island Operating Company, Inc. and Shamrock Management LLC, companies that provided personnel to operate the platform. The Defendants deny Plaintiff's allegation that

an incident occurred in the manner Plaintiff claims, and also claim that the Plaintiff had pre-existing back injuries.

### Jurisdiction

Subject-matter jurisdiction and personal jurisdiction are uncontested.  The incident at issue in this lawsuit occurred on an offshore platform on the Outer Continental Shelf.  The Court has full and complete jurisdiction pursuant to Outer Continental Shelf Lands Act (OCSLA) 43 U.S.C. § 1349(b)(1).  Section 43 U.S.C. § 1349(b)(1) states that such disputes may be brought in the judicial district in which any defendant resides.  Defendant Fieldwood Energy LLC is a resident of the Southern District of Texas.

### Pending Motions

The following Motions are pending (or may be pending):

1.  Plaintiff's and Defendants' Motion in Limine filed contemporaneously herewith.

### Contentions of the Parties

**Plaintiff's Contentions:**

1.      Mr. Raicevic fell on December 1, 2014 in oil and water that had been leaking for months at an offshore platform off the coast of Louisiana owned by Fieldwood and operated by Wood Group, Island, and Shamrock.

2.      Mr. Raicevic was responding to an alarm after midnight that he was required to quickly respond to.

3.      Mr. Raicevic had been dangerously ordered by Fieldwood, Wood Group, Island, and Shamrock to respond to the alarm quickly to try and prevent the compressor from shutting down.

4.      Mr. Raicevic had been told by Fieldwood, Wood Group, Island, and Shamrock that he had approximately 3 minutes to respond to compressor alarms to prevent a shut-down.

5.      Fieldwood, Wood Group, Island, and Shamrock seek to prevent compressor shut-downs because it stops the production of oil and gas, and reduces profits.

6.      At the time of the fall, Mr. Raicevic was wearing what time-permitted him to adorn to follow the orders of Fieldwood, Wood Group, Island, and Shamrock to quickly respond to the alarm.

7.      As a result of the fall, Mr. Raicevic sustained serious injuries including a back injury for which he had surgery in May 2015.

8.      Mr. Raicevic's injuries are not pre-existing.

9.      Mr. Raicevic has already undergone significant medical treatment costing hundreds of thousands of dollars (including a back surgery), and requires significant additional medical treatment that will cost hundreds of thousands of dollars.

10.     Mr. Raicevic has suffered medical expenses, loss of earnings, pain and suffering, mental anguish, physical disfigurement, and loss of enjoyment of life (all past and future).

11.     At the time of the incident, Mr. Raicevic was a mechanic earning approximately $100,000 per year.

12.     Mr. Raicevic's job and profession was very physically demanding.

13.     Mr. Raicevic is now severely limited in what he can do physically.

14.     Mr. Raicevic has been unable to return to work, and is unlikely to be able to do physical labor again (which is really all Mr. Raicevic knows).  Mr. Raicevic's lost wages in the past and future are more than $1 million.

15.     Mr. James Hadley of Fieldwood saw Mr. Raicevic at the time of the fall or shortly thereafter, told Mr. Raicevic he would come back for him, but did not come back to assist Mr. Raicevic.

16.     Mr. Randy Vincent also saw Mr. Raicevic after the fall and noted that Mr. Raicevic was walking awkwardly and slowly and unusually and consistent with an injury.

17.     Mr. Randy Vincent also saw James Hadley shortly after the fall.

18.     Mr. Raicevic reported his fall to those working in connection with the platform, and Fieldwood, Wood Group, Shamrock, Island, Linear, Exterran, and Waukesha-Pearce (and their representatives) were all aware of his fall.

19.     The leaks that Mr. Raicevic fell in had been ongoing for months, and included a leaking vent pipe from a pressure packing system, a leaking engine seal, and the compressor roof that allowed water to freely leak.

20.     Mr. Raicevic had reported the leaks to Fieldwood, Wood Group, Island, and Shamrock, and these entities knew of the leaks.

21.     Fieldwood, Wood Group, Island, and Shamrock are supervisors and operators at the platform and in the field, and have the authority to make decisions regarding operations and maintenance.

22.     Mr. Raicevic was instructed and ordered by Fieldwood, Wood Group, Island, and Shamrock that the leaks were not significant enough to warrant repair.

23.     Fieldwood, Wood Group, Island, and Shamrock are responsible for the incident due to their collective negligence in operating and controlling the platform, and also due to the condition of the platform.

24.     Fieldwood, Wood Group, Island, and Shamrock prioritized profits over safety in how they operated and maintained the platform.

25.     Fieldwood, Wood Group, Island, and Shamrock avoided and minimized doing repairs and addressing safety issues generally, and told workers not to do repairs that were necessary.  Workers were required to follow these instructions and culture, and those that did not would face retaliation.

26.     Fieldwood, Wood Group, Island, and Shamrock avoided doing repairs or addressing safety issues if it would require production to stop, and told workers not to do repairs that were necessary.  Workers were required to follow these instructions and culture, and those that did not would face retaliation.

27.     Fieldwood, Wood Group, Island, and Shamrock told workers not to document safety issues, such as leaks, and told workers not to document other issues.

28.     Fieldwood, Wood Group, Island, and Shamrock did a poor job properly maintaining paperwork at the platform.

29.     Fieldwood, Wood Group, Island, and Shamrock cut corners when addressing safety issues, such as using oil pads instead of fixing leaks.

30.     The platform is very old (approximately 40 years old), is in poor condition and constantly leaks, and has been poorly and unsafely maintained and operated for years.

31.     The platform's oil records and other records reflect considerable leak issues.

32.     Wood Group, Island, Shamrock, Linear, Exterran, and Waukesha-Pearce (and their representatives) depend on Fieldwood for considerable business and are heavily motivated and biased not to blame themselves or Fieldwood for the incident.

33.     The so-called evidence and arguments relied upon by Fieldwood, Wood Group, Island, Shamrock, Waukesha-Pearce, Axiom (and their representative and any other third-party) to deny the incident occurred or that Mr. Raicevic has sustained injuries as a result are false, self-serving, not credible, and reflect a coordinated effort on their behalf to point the finger at someone else and not point the finger at Fieldwood, Wood Group, Island, and Shamrock.

34.     Mr. Raicevic was not the borrowed servant, borrowed employee, co-employee (or any similar classification) of Fieldwood, Wood Group, Island, or Shamrock, and the factual and legal arguments made in connection with these issues (including but not limited to the argument that the defendants cannot be liable to Plaintiff) by Fieldwood, Wood Group, Island, and

Shamrock are false and incorrect and were not properly pled. Similarly, the Defendants were not borrowed employees or similar classifications of each other, and these issues were also not properly pled. Moreover, the Defendants have taken inconsistent positions in similar situations as to whether the agreements at issue give rise to borrowed servant status versus independent contractor status.

35.     The negligence of Fieldwood, Wood Group, Island, and Shamrock is further evidenced by their failure to abide by federal statutes regarding offshore operations in the Outer Continental Shelf and as outlined herein in the contested issues of law.

36.     The voluminous evidence collectively establishes that Mr. Raicevic fell on December 1, 2014 due to the negligence of the Defendants, and that the Defendants are responsible for causing Mr. Raicevic serious injuries and damages.

37.     Mr. Raicevic was not contributorily negligent.

38.     Mr. Raicevic further incorporates the factual and legal contentions in his latest amended disclosures, interrogatory answers, summary judgment briefing, and motions in limine.

**<u>Defendants' Contentions:</u>**

1.      No slip(s) and fall(s) occurred on the Main Pass 153 B offshore fixed platform ("MP 153 B Platform" or the "Platform") on or about December 1, 2014, involving the Plaintiff Milorad Raicevic ("Plaintiff" or "Mr. Raicevic").

2.      There is no evidence that Plaintiff sustained injuries as the result of an accident on the Platform in the manner he claims.

3.      The operations conducted during the entire period which Plaintiff claims caused his injury on December 1, 2014, were typical of normal offshore platform operations.

4.      The Platform documentation establishes that the Platform was operated in a safe and ordinary manner, that maintenance was performed as required, any mechanical issues that required attention were addressed, and there was never an unsafe condition that remained unattended.

5.      The documentary evidence alone from the Platform disproves all of Plaintiff's allegations, including a) Plaintiff's claim that conditions that arose were not documented or were somehow being concealed, b) Plaintiff's claim there was insufficient downtime to correct conditions that arose, and c) Plaintiff's contentions that an oil leak existed from a vent pipe for over three months without attention.

6.      For several months before December 1, 2014, Plaintiff was no longer able to perform his work due to serious and debilitating degenerative changes that were pre-existing in his lower back that were causing symptoms.

7.      According to Plaintiff, his lower back condition became symptomatic, and his disability from these injuries began, in or before September of 2014, when Plaintiff chose to sleep on a mattress he placed on the top of a desk.

8.      After several nights on the SP 65 A, during some or all of which Plaintiff slept on a mattress placed on a desk for several nights, Plaintiff a) missed   time from work, b) reported he likely will never be able to do his job again while he was off work, and c) when Plaintiff attempted to return to work approximately 30 days before December 1, 2014, it was necessary to man the Platform with a second mechanic, Randy Vincent, during Plaintiff's hitch due to Plaintiff's inability to perform the work.

9.      Plaintiff has never reported a slip and fall or accident to any of the Defendants.

10.      During regular work hours on the morning of December 1, 2014, Plaintiff in the normal course of operations transferred via helicopter to a nearby Platform that required his attention.  During that ride, Plaintiff's lower back pain increased to the point he could no longer remain offshore, and Plaintiff requested to be sent in for medical attention.

11.      Fieldwood was not negligent and there is no evidence to support any claims against it.

12.      Wood Group was not negligent and there is no evidence to support any claims against it.

13.      Shamrock was not negligent and there is no evidence to support any claims against it.

14.      Island Operating was not negligent and there is no evidence to support any claims against it.

15.      There was no unreasonably dangerous condition which caused or contributed to Raicevic's alleged injury.

16.      If there was an oil leak or spill, the Plaintiff's job was to repair or fix the issue and to clean up the area.

17.      Plaintiff should been wearing the proper PPE including footwear and not "crocs" on the day of the incident made the basis of the lawsuit. .

18.      Plaintiff's injuries to his lower back, if any, are the result of a pre-existing condition and were not caused by the incident made the basis of this suit.

19.      Plaintiff has no or minimal loss of earnings and earning capacity.

20.      Fieldwood employee James Hadley did not see the Plaintiff fall down and did not fail to come back for him.

21.     Randy Vincent did not see the Plaintiff fall down nor did Randy Vincent think that the Plaintiff fell.

22.     Fieldwood, Wood Group, Island or Shamrock was not made aware that Plaintiff allegedly fell until this lawsuit was filed.

23.     There were no leaks on the Platform ongoing for months that created a safety hazard.

24.     The Plaintiff did not report any such leaks to Fieldwood, Wood Group, Island or Shamrock.

25.     Plaintiff was not told by Fieldwood, Wood Group, Island or Shamrock that the leaks were not significant enough to repair.  In fact, Plaintiff did not tell Fieldwood, Wood Group, Island or Shamrock about a leak.

26.     Fieldwood, Wood Group, Island and Shamrock did not prioritize profits over safety.

27.     Fieldwood, Wood Group, Island and Shamrock did not avoid or minimize doing repairs and addressing safety issues.  To the contrary, Fieldwood, Wood Group, Island and Shamrock emphasize safety and repair of any condition in dis-repair.

28.     Fieldwood, Wood Group, Island and Shamrock never told workers not to document safety issues such as leaks or any other issue.  To the contrary, safety issues were to be addressed as soon as possible and did not cut corners on safety.

29.     Fieldwood, Wood Group, Island and Shamrock properly maintained paper work.

30.     The Platform is not in poor condition, does not constantly leak, and has been properly maintained and operated.

31.     Wood Group, Island, Shamrock, Linear, Exterran and Waukesha-Pearce are not dependent upon Fieldwood for business and are not motivated or biased not to blame Fieldwood if there were something to blame it for, which there is not.

32.     Fieldwood, Wood Group, Island and Shamrock properly performed their jobs and responsibilities, were not negligent and did not violate any law.

33.     Plaintiff was Fieldwood's borrowed employee.

**Fieldwood's Additional Contentions:**

1.     Plaintiff was the borrowed servant of Fieldwood, subject to Fieldwood' control, subject to Fieldwood's policies and procedures, performing Fieldwood's work, utilizing Fieldwood's equipment, on Fieldwood's Platform for numerous years, under an agreement with Plaintiff's employer to which Plaintiff and his employer conceded.  Fieldwood supplied all transportation to and from the Platform as well as room and board for Plaintiff while on the platform.  Furthermore, Fieldwood had the right to remove Plaintiff from the platform and paid his employer based on time sheets submitted to Fieldwood by Plaintiff.

2.     Fieldwood cannot be liable to Plaintiff, its borrowed employee, as it has the protection of the LHWCA, Texas Workers' Compensation Act and/or Louisiana Worker's Compensation Act's bar to suit.

3.     Even if the production operators supplied by Island Operating to Fieldwood working upon the MP 153 B were not the borrowed co-employees of Raicevic, but were the borrowed employees of Fieldwood, Fieldwood is only liable *in solido* per *Morgan v. ABC Manuf'r*, 710 So.2d 1077 (La. 1998).

**Wood Group's Additional Contentions:**

1.     The production operators and mechanics supplied by Wood Group to Fieldwood working on the Platform at all times pertinent to Plaintiff's claims were the borrowed employees of Fieldwood, subject to Fieldwood's control, performing Fieldwood's work, utilizing Fieldwood's equipment, on Fieldwood's Platform for numerous years, under an agreement between Fieldwood and Wood Group.  Further, Wood Group and its production operators and mechanics were controlled by Fieldwood, including the conducting of operations under Fieldwood's designated policies and procedures, safety meetings, and JSA's.  Fieldwood's Person in Charge had the Ultimate Work Authority.  During that time, Fieldwood provided the transportation for Wood Group's personnel to and from the Platform, and provided all room and board whenever any such personnel were working upon the Platform.  Furthermore, Fieldwood had the right to remove such personnel from the Platform and paid Wood Group based on time sheets submitted to Fieldwood by Wood Group personnel.  All activity occurring on Fieldwood's Platform was under Fieldwood's SEMS program.

2.     As such, if Plaintiff is Fieldwood's borrowed employee, he is the borrowed co-employee of Wood Group, and Wood Group cannot be liable to Plaintiff as Wood Group has the protection of the LHWCA, Texas Workers' Compensation Act and/or Louisiana Worker's Compensation Act's bar to suit.   Moreover, Wood Group cannot be vicariously liable for the acts of the Wood Group borrowed employees.

**Island Operating's Additional Contentions**

1.     The production operators supplied by Island to Fieldwood working on Fieldwood's MP 153 B platform at all times pertinent to Plaintiff's claims herein, were the borrowed employees of Fieldwood, subject to Fieldwood' control, performing Fieldwood's

work, utilizing Fieldwood's equipment, on Fieldwood's platform for numerous years, under an agreement between Fieldwood and Island, and Island and its production operators conceded, including the conducting of operations under Fieldwood's designated policies and procedures, safety meetings, JSA's and pursuant to the Ultimate Work Authority of Fieldwood's Person in Charge as that term is defined by both Fieldwood and the applicable statutes and regulations set forth pursuant to the OCSLA.  During that time, Fieldwood provided the transportation for all such personnel to and from the platform, and provided all room and board whenever any such personnel were working upon the platform.  Furthermore, Fieldwood had the right to remove such personnel from the platform and paid Island based on time sheets submitted to Fieldwood by Island's personnel.  All activity occurring on Fieldwood's platform was under Fieldwood's SEMS program.

2.      As such, if Plaintiff is Fieldwood's borrowed employee, he is the borrowed co-employee of Island, and Island cannot be liable to Plaintiff as it has the protection of the LHWCA, Texas Workers' Compensation Act and/or Louisiana Worker's Compensation Act's bar to suit.

3.      Alternatively, if the production operators supplied by Island Operating to Fieldwood working upon the MP 153 B were not the borrowed co-employees of Raicevic, never the less, as borrowed employees of Fieldwood, Fieldwood is solely vicariously liable under applicable law for the acts of its borrowed employees over whom it exercised control.

## Shamrock's Additional Contentions

1.      The mechanics and/or operators supplied by Shamrock to Fieldwood working on Fieldwood's MP 153 B platform at all times pertinent to Plaintiff's claims herein, were the borrowed employees of Fieldwood, subject to Fieldwood' control, performing Fieldwood's work, utilizing Fieldwood's equipment, on Fieldwood's platform for numerous years, under an agreement between Fieldwood and Shamrock, and Shamrock  and its mechanics conceded, including the conducting of operations under Fieldwood's designated policies and procedures, safety meetings, JSA's and pursuant to the Ultimate Work Authority of Fieldwood's Person in Charge as that term is defined by both Fieldwood and the applicable statutes and regulations set forth pursuant to the OCSLA and its maintenance foreman.   During that time, Fieldwood provided the transportation for all such personnel to and from the platform, and provided all room and board whenever any such personnel were working upon the platform.  Furthermore, Fieldwood had the right to remove such personnel from the platform and paid Shamrock based on time sheets submitted to Fieldwood by Shamrock's personnel.  All activity occurring on Fieldwood's platform was under Fieldwood's SEMS program.

2.      As such, if Plaintiff is Fieldwood's borrowed employee, he is the borrowed co-employee of Shamrock, and Shamrock cannot be liable to Plaintiff as it has the protection of the LHWCA, Texas Workers' Compensation Act and/or Louisiana Worker's Compensation Act's bar to suit.

10

## Admissions of Fact

1.     Plaintiff Milorad Raicevic was working aboard the MP 153B fixed offshore Platform in the Outer Continental Shelf off the coast of Louisiana in the Gulf of Mexico on December 1, 2014.

2.     At all times relevant, Plaintiff was employed by Waukesha-Pearce Industries as a mechanic.

3.     The Platform was owned by Fieldwood at the time of the Incident, and had previously been owned by Apache.

4.     On December 1, 2014, Fieldwood's representative working aboard the Platform was Mr. James Hadley.

5.     Mr. James Hadley of Fieldwood had worked aboard the Platform for several years.

6.     Fieldwood also hired multiple third-party companies to assist in operating the Platform, including Wood Group, Island Operating, and Shamrock Management.  Wood Group, Island Operating, and Shamrock had worked at the platform for several years.

7.     Wood Group, Island Operating, and Shamrock's employees would rotate men on the Platform, generally in two-week shifts.

8.     In the months leading up to the alleged incident on December 1, 2014, Wood Group, Island Operating, and Shamrock all had employees working on the Platform at various times.

9.     On December 1, 2014, Adam Lewis (a payroll employee of Island Operating) was working under a payroll classification of a Lead Operator aboard the Platform.

10.     On December 1, 2014, Uriah Langston (a payroll employee of Island Operating) was working under a payroll classification of a B-Operator aboard the Platform.

11.     On December 1, 2014, David Foret (an employee of Wood Group) was a A-Operator aboard the Platform.

12.     Also aboard the Platform on December 1, 2014 were Charles Anderson (an employee of Linear Controls) and Randy Vincent (an employee of Exterran).

13.     After Plaintiff complained of back pain on December 1, 2014, Plaintiff was helicoptered from the Platform back to shore and went to the hospital.

## Contested Issues of Fact

### Plaintiff's contested issues of fact:

1.      On information and belief, all of "Plaintiff's Contentions" listed above (and incorporated herein) are disputed, at least in part, by the Defendants, summarized below as follows:

2.      The nature and extent of Plaintiff's injuries.

3.      The extent to which Plaintiff's injuries are pre-existing.

4.      The amount of reasonable and necessary past and future medical care.

5.      The amount of wage loss attributable to the incident.

6.      Whether Plaintiff fell on December 1, 2014, and the circumstances surrounding the fall.

7.      Whether an alarm sounded on December 1, 2014 that Plaintiff responded to.

8.      Whether there were witnesses to Plaintiff's falls and/or following Plaintiff's falls on December 1, 2014.

9.      Whether Plaintiff's injuries were the result of falls on December 1, 2014.

10.     The condition of the MP153B platform on December 1, 2014, and whether the conditions had been reported and to whom.

11.     The condition of the MP153B platform preceding December 1, 2014, and whether the conditions had been reported and to whom.

12.     The condition of the MP153B platform following December 1, 2014.

13.     Whether Defendants acted with reasonable care and/or were negligent.

14.     How operations were conducted aboard the MP153B platform, the condition of the platform, and whether such operations were safe or reasonable, including but not limited to whether there were leaks (including but not limited to at the vent pipe, the engine seal, and the compressor roof), how leaks and other issues were addressed, whether leaks and other issues were documented, whether workers were told to not document and address certain maintenance and safety issues and how workers who reported issues were treated, whether Plaintiff and/or others were told to rush and/or quickly respond to alarms in order to prevent compressor shutdowns, the nature of alarms at the platform and how Mr. Raicevic was told to respond to them, whether and the extent to which Defendants prioritized keeping operations running versus addressing safety issues, how much oil was being used and/or lost through leaks at the platform,

whether proper JSAs and meetings were conducted, the condition of the platform over the years and whether the approximate 40 year platform was in very poor condition and had a history of safety violations, and whether appropriate policies and procedures were in place or followed for safe and reasonable operations.

15.     Whether there were leaks on the platform on December 1, 2014 and in the months leading up to December 1, 2014, the nature and extent of such leaks, whether Plaintiff reported the leaks, who he reported them to, and how such reports were responded to.

16.     Which persons and entities had the authority and/or responsibility for particular operations on the platform.

17.     Whether the factors pertaining to borrowed servant / co-employee / or similar characterization are present in this case.

18.     The scope and authority of James Hadley's responsibilities when he was designated Person in Charge.

19.     Indemnification rights between the Defendants and third-parties and the extent to which those rights are impacting and motivating the Defendants to make certain arguments to avoid liability.

**Defendants' Contested Issues of Fact:**

1.     Whether the incident about which the Plaintiff brought suit occurred.

2.     If the incident did occur, whether Plaintiff was negligent.

3.     If the incident did occur, whether Plaintiff was solely negligent.

4.     If the incident did occur, whether Plaintiff's own actions was a producing proximate or legal cause of the incident.

5.     If the incident did occur, whether WPI was negligent.

6.     If the incident did occur, whether the negligence, if any, of WPI was a producing, proximate or legal cause of any injury to Plaintiff, or an aggravation, acceleration orexacerbation of any pre-existing condition or disease.

7.     Whether Fieldwood was negligent.

8.     Whether Wood Group was negligent.

9.     Whether Island Operating was negligent.

10.     Whether Shamrock was negligent.

11.     Whether the negligence, if any, of Fieldwood was a producing, proximate or legal cause of any injury to Plaintiff, or an aggravation, acceleration orexacerbation of any pre-existing condition or disease.

12.     Whether the negligence, if any, of Wood Group was a producing, proximate or legal cause of any injury to Plaintiff, or an aggravation, acceleration orexacerbation of any pre-existing condition or disease.

13.     Whether the negligence, if any, of Island Operating was a producing, proximate or legal cause of any injury to Plaintiff, or an aggravation, acceleration or exacerbation of any pre-existing condition or disease.

14.     Whether the negligence, if any, of Shamrock was a producing, proximate or legal cause of any injury to Plaintiff, or an aggravation, acceleration orexacerbation of any pre-existing condition or disease.

15.     Whether there was a 3-minute rule to respond to an alarm.

16.     Whether the Platform was maintained in a safe condition.

17.     Whether Plaintiff's alleged injuries, if any, were the result of pre-existing conditions.

18.     Whether Plaintiff's medical condition, which he claims is attributable to the incident, is solely the result of a pre-existing injury.

19.     The nature and extent of Plaintiff's injuries, if any.

20.     Whether Plaintiff will require medical treatment in the future for the injuries, if any, allegedly sustained in the incident.

21.     Whether Plaintiff has been incapacitated from performing the usual and ordinary tasks of his job.

22.     Whether Plaintiff's incapacity, if any, is permanent; if not, the extent and duration of his incapacity, if any.

23.     Whether Plaintiff has lost wages, if any, as a result of his alleged inability to return to work due to the injuries allegedly sustained in the incident.

24.     Whether Plaintiff has suffered physical pain and mental anguish, if any, in the past as a result of the injuries he allegedly sustained in the incident.

25.     Whether, in all reasonable probability, Plaintiff will suffer any physical pain

14

and mental anguish in the future as a result of the injuries he allegedly sustained in the incident.

26.     Whether Plaintiff has suffered physical impairment, if any, in the past as a result of the injuries he allegedly sustained in the incident.

27.     Whether, in all reasonable probability, Plaintiff will suffer physical pain impairment, if any, in the future as a result of the injuries he allegedly sustained in the

28.     Whether Plaintiff has suffered loss of enjoyment of life, if any, in the past as a result of the injuries he sustained in the incident.

29.     Whether, in all reasonable probability, Plaintiff will suffer loss of enjoyment of life, if any, in the future as a result of the injuries he sustained in the incident.

30.     The amount of damages, if any, for which Fieldwood is liable to Plaintiff.

31.     The amount of damages, if any, for which Wood Group is liable to Plaintiff.

32.     The amount of damages, if any, for which Island Operating is liable to Plaintiff.

33.     The amount of damages, if any, for which Shamrock is liable to Plaintiff.

32.     Who had control over Plaintiff and the work he was performing?

33.     Whose work was being performed?

34.     Was there an agreement, understanding, or meeting of the minds between Waukesha Pearce and Fieldwood concerning Plaintiff's employment?

35.     Did the Plaintiff acquiesce to the work situation?

36.     Who furnished the tools and place for performance of Plaintiff's work?

37.     Was the Plaintiff's work for Fieldwood over a considerable length of time?

38.     Who had the right to discharge the Plaintiff?

39.     Who had the obligation to pay Plaintiff?

40.     Was Wood Group's operators and/or mechanics on board the Platform during the time period in question Fieldwood's borrowed employee?

41.     Was Island Operating's operators on board the Platform during the time period in question Fieldwood's borrowed employee?

42.     Was Shamrock's operators and/or mechanics on board the Platform during the time period in question Fieldwood's borrowed employee?

43.     Was Mr. James Hadley Fieldwood's designated "Person in Charge" with "Ultimate Work Authority" on the Platform.

44.     The scope and authority of James Hadley's responsibilities.

## Agreed Propositions of Law

1.     Plaintiff's claims against Defendants arise under the Outer Continental Shelf Lands Act and as such, Louisiana common law on negligence applies to this lawsuit as to liability and damages.

2.     This Court has subject matter jurisdiction over this case.

3.     This Court has personal jurisdiction over the Defendants in this case.

## Contested Issues of Law

1.     Whether the following statutes apply, if such standards apply were they violated by Defendants, and can the statutes support Plaintiff's negligence claims:

> 33 C.F.R. § 142.1: "This part is intended to promote workplace safety and health by establishing requirements relating to personnel, workplace activities and conditions, and equipment on the Outer Continental Shelf (OCS)."

> 33 C.F.R. § 142.4(b): "Persons responsible for actual operations, including owners, operators,2 contractors, and subcontractors, shall ensure that those operations subject to their control are conducted in compliance with workplace safety and health regulations of this part and, in addition, free from recognized hazards." [emphasis added]

> 33 C.F.R. § 142.84: "All staging, platforms, and other working surfaces and all ramps, stairways, and other walkways must be kept clear of portable tools, materials, and equipment not in use and be promptly cleared of substances which create a tripping or slipping hazard."

> Louisiana Civil Code Article 2315: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." LSA-Art. 2315.

30 C.F.R. § 250.101:

> The Secretary of the Interior (Secretary) authorized the Bureau of Safety

and Environmental Enforcement (BSEE) to regulate oil, gas, and Sulphur exploration, development, and production operations on the Outer Continental Shelf (OCS). Under the Secretary's authority, the Director requires that all operations:

(a) Be conducted according to the OCS Lands Act (OCSLA), the regulations in this part, BSEE orders, the lease or right-of-way, and other applicable laws, regulations, and amendments; and

30 C.F.R. § 250.105:

"You means a lessee, the owner or holder of operating rights, a designated operator or agent of the lessee(s), a pipeline right-of-way holder, or a State lessee granted a right-of-use and easement."

30 C.F.R. § 250.107:

(a) You must protect health, safety, property, and the environment by: (1) Performing all operations in a safe and workmanlike manner; (2) Maintaining all equipment and work areas in a safe condition; (3) Utilizing recognized engineering practices that reduce risks to the lowest level practicable when conducting design, fabrication, installation, operation, inspection, repair, and maintenance activities; and (4) Complying with all lease, plan, and permit terms and conditions.

(b) You must immediately control, remove, or otherwise correct any hazardous oil and gas accumulation or other health, safety, or fire hazard.

30 C.F.R. § 282.1: " … The Secretary is authorized to prescribe and amend regulations that the Secretary determines to be necessary and proper in order to provide for the prevention of waste, conservation of the natural resources of the OCS…"

30 C.F.R. § 282.3 [Definitions]: "Lessee means the person authorized by a lease, or an approved assignment thereof, to explore for and develop and produce the leased deposits in accordance with the regulations in this chapter. The term includes all parties holding that authority by or through the lessee."

30 C.F.R. § 282.27: "(a) The lessee shall conduct all exploration, testing, development, and production activities and other operations in a safe and workmanlike manner and shall maintain equipment in a manner which assures the protection of the lease and its improvements, the health and safety of all persons, and the conservation of property, and the environment."

2.     Whether the statutes mentioned above, assuming they are even introduced into evidence, which Defendants claim they should not be, can be used at all as a basis for finding fault as to Wood Group, Island Operating or Shamrock because the Defendants argue the statutes have no application to independent contractors as fully addressed in Defendants'

Motion in Limine.

3.      It is Plaintiff's position that La C.C. Art. 2315, La C.C. Art. 2316, La C.C. Arts. 2317 and 2317.1 apply to this matter, and it is Defendants' position that only Article 2317 and 2317.1 apply.   These statutes follow:

  i.   La C.C. Art. 2315:  "Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it."

  ii.  La C.C. Art. 2316:   "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."[1]

  iii. La C.C. Art. 2317: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications."

  iv.  La C.C. Art. 2317.1: "The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case."

4.      Whether, as Defendants' contend, the Plaintiff was a person engaged to repair equipment of the platform, such as the compressor, that the jury should consider, in its determination of whether the risk presented was unreasonable, factors regarding Plaintiff's work, such as the knowledge that he had about the problem, how reasonable it was to assume that he was aware of the particular risks presented, his ability to minimize the risks, and the incentive of the owner to repair the problem.

5.      Whether Fieldwood and Island Operating are jointly and severally liable for the negligence, if any, attributed to the production operators supplied by Island Operating working upon the Platform; and, if so, the percentage of vicarious liability to be apportioned to each.

6.      Whether Fieldwood is the borrowing employer of the production operators supplied by Island Operating to Fieldwood on Fieldwood's Platform, and if so whether Fieldwood the sole party vicariously liable for the acts of the production operators in Fieldwood's capacity as the borrowing employer exercising exclusive control over the production operators at all times pertinent to Plaintiff's claims, and whether this issue was

---

[1] Louisiana Civil Code Article 2316

properly pled.  Defendants contends that the Court already addressed this issue, held that IOC had properly pled the borrowed servant defense, and gave Wood Group, Fieldwood, and Shamrock leave to amend and plead the borrowed servant affirmative defense.

7.     Whether Plaintiff was Fieldwood's borrowed employee and whether this issue was properly pled.  Fieldwood contends that the Court already addressed this issue and gave Fieldwood leave to amend and plead the borrowed servant affirmative defense.

8.     Whether Plaintiff was the borrowed co-employee of Wood Group, Shamrock, and Island Operating and whether this issue was properly pled.   Defendants contends that the Court already addressed this issue, held that IOC had properly pled the borrowed servant defense, and gave Wood Group, Fieldwood, and Shamrock leave to amend and plead the borrowed servant affirmative defense.

9.     Whether, as Defendants contend. Plaintiff is the borrowed employee of Fieldwood, Fieldwood is not liable to Plaintiff for damages based upon the protection of the LHWCA, Texas Workers' Compensation Act and/or Louisiana Worker's Compensation Act's bar to suit.

10.     Whether, as Defendants contend, Plaintiff is the borrowed employee of Fieldwood, and the co-borrowed employee of Wood Group, Island, and/or Shamrock, any co-borrowing employer is not liable to Plaintiff for damages based upon the protection of the LHWCA, Texas Workers' Compensation Act and/or Louisiana Worker's Compensation Act's bar to suit.

11.     Whether, as Shamrock asserts, that its contractual choice of law agreement may be applicable as it relates to Defendants and third parties.

12.     Whether, as Plaintiff contends, Texas law governs the interpretation of the Master Service Agreements between the parties, including but not limited to the pertinent choice of law provisions and provisions regarding the details of the work, which Plaintiff contends is one of the elements to be analyzed in borrowed servant analysis.

13.     The extent to which the Defendants are legally entitled to indemnification arising out of this case.

14.     Whether Plaintiff received or is receiving workers' compensation benefits under the Longshore & Harbor Workers' Compensation Act, 33 U.S.C. §901 *et. seq.*, versus another vehicle such as Texas Workers' Compensation.

15.     Whether Fieldwood is vicariously liable for any negligence of its employees.

16.     Whether Shamrock is vicariously liable for any negligence of its employees.

17.     Whether Wood Group is vicariously liable for any negligence of its employees.

18.     Whether Island is vicariously liable for any negligence of its employees.

## Exhibits and Exhibit List

Plaintiff's Exhibit List will be filed contemporaneously with the Joint Pre-Trial Order, but as a separate submission.

Defendants' Exhibit List will be filed contemporaneously with the Joint Pre-Trial Order, but as a separate submission.

## Witnesses and Witness List

### Plaintiff's Witnesses:

1.      Milorad Raicevic, c/o counsel of record John D. Sheppard, Morrow & Sheppard LLP, 3701 Kirby Dr., Ste. 840, Houston, Texas 77098, 713-489-1206 Mr. Raicevic is the Plaintiff in this matter and has information regarding his claims and allegations, how the incident occurred and the persons and companies involved in the work involved, the injuries sustained in the incident, his medical treatment, and his damages.

2.      Rubin S. Bashir, MD., Spine & Orthopedic Surgical Institute, 2656 South Loop West, Suite 595, Houston, Texas 77054, T: 346-980-8701.  Dr. Bashir is expected to testify regarding his evaluation of the medical condition of Plaintiff as a result of the injuries he received in the incident made the basis of this suit, his projected medical cost analysis for Plaintiff's future medical needs and costs, and past medical treatment.  This doctor is also expected to testify as to Plaintiff's physical condition based upon his own physical evaluation and the medical records in the case.  He will also offer opinions as the reasonableness and necessity of medical treatment Plaintiff has received from the incident in question as well as the reasonableness and necessity of medical treatment Plaintiff will require in the future.  He will also offer opinions as the reasonableness and necessity of medical bills, and the usual and customary charges for said services, and the medical necessity of same to treat Plaintiff's conditions and injuries caused by the incident.  Plaintiff further refers to his expert disclosures.

3.      Dr. Sasha Iversen, Physician Life Care Planning, 11550 IH 10 West, Suite 375, San Antonio, Texas 78230, (210) 501-0995.  Dr. Iversen is expected to testify regarding her evaluation of the medical condition of Plaintiff as a result of the injuries he received in the incident made the basis of this suit and his projected medical cost analysis for Plaintiff's future medical needs and costs.  She is expected to testify as to Plaintiff's physical condition based upon their own physical evaluation and the medical records in the case.  She will also offer opinions as the reasonableness and necessity of medical treatment Plaintiff has received from the incident in question as well as the reasonableness and necessity of medical treatment Plaintiff will require in the future.  She will also offer opinions as the reasonableness and necessity of medical bills, and the usual and customary charges for said services, and the medical necessity of same to treat Plaintiff's conditions and injuries caused by the incident.  Plaintiff further refers to his expert dislosures.

4.      Kenneth G. McCoin, Ph.D., CFA, 7670 Woodway, Suite 171, Houston, Texas 77063, (713) 626-0144.  Dr. McCoin is expected to testify regarding Plaintiff's loss of earning capacity.   He will use the "below market discount" methodology. Dr. McCoin will consider: (1) Plaintiff's earnings at the time of injury; (2) Plaintiff's age; (3) Plaintiff's work-life expectancy according to Department of Labor statistics; (4) future real compensation growth; (5) benefits; (6) work expenses; (7) taxes and Social Security; (8) discount rates; (9) post injury earning capacity as dictated by Plaintiff's treating physicians and vocational rehabilitation specialist; (10) potential loss of household services.  On balance, Dr. McCoin will provide the jury with a means of calculating loss of earning capacity given the foregoing calculation.  Plaintiff further refers to his expert disclosures.

5.      Gregg S. Perkin, P.E., Engineering Partners International, 1301 Kingwood Drive, Kingwood, Texas  77339, (281) 358-2126.  Mr. Gregg Perkin is expected to testify regarding as to the matters and documents addressed in his report and deposition, Defendants' safety, maintenance, and operational procedures and practices, conduct on the date in question (and the training, supervision, and communication leading up to the date in question) and all aspects of liability (including causation) regarding the incident in question.  He is expected testify that Defendants' standard of care in allowing Plaintiff's injuries to occur as they did fell below industry practices and standards, fell below workplace safety and operation standards and regulations, and fell below what was reasonable and prudent given the circumstances (collectively, the "standard of care").  Further, Perkin will testify that Defendants failed to provide a safe work environment, to warn of dangers, and to remedy dangers.  Perkin will explain how and why this incident occurred based on Defendants' specific active conduct and omissions and products on the day in question, and in light of the other circumstances.  Plaintiff further refers to his expert disclosures.  Perkins has been provided all non-medical documents produced in this case.

6.      Jay Nichols and the corporate representative(s) of Shamrock Management, LLC present at trial, c/o counsel of record Mr. James Tompkins, Galloway, Johnson, Tompkins, Burr & Smith, 1301 McKinney Suite 1400, Houston, Texas 77010, 713-599-0700.  These persons have knowledge of Shamrock's involvement at and regarding the MP153B platform and the relationship of the parties.  Mr. Raicevic reported leaks to Mr. Nichols, and Mr. Nichols failed to address them (as detailed in Plainfif's MSJ responses and replies).

7.      Tracy Oliver and the corporate representative(s) of Wood Group present at trial, c/o counsel of record Bradley DeLuca, Johnson Deluca Kurisky & Gould P.C., 1221 Lamar, Suite 1000, Houston, Texas 77010, 713-652-2525. On information and belief, these individuals are operators and are involved in the operations and maintenance where the incident occurred and have knowledge of the condition of the of the location and the equipment, work performed at the location, applicable operating and safety policies and procedures, communications with and concerning Plaintiff, and the relationship of the parties.  Please also see separate submission of deposition designations.

8.      James Hadley and the corporate representative(s) of Fieldwood Energy LLC present at trial, c/o counsel of record Randy Donato, 3200 Southwest Freeway, Suite 2300, Houston, Texas 77027, 713-403-5432. On information and belief, these representatives work for the owner of the platform and are involved in the operations and maintenance where the incident

and have knowledge of the condition of the of the location and the equipment, work performed at the location, applicable operating and safety policies and procedures, communications with and concerning Plaintiff, and the relationship of the parties.  Please also see separate exhibit of deposition designations.

9.     Eric Fontenot and the corporate representatives of Island Operating present at trial, c/o counsel of record Mr. Hal J. Broussard, Broussard & Kay LLC, 909 Garber Rd., Post Office Box 189, Broussard, LA 70518. On information and belief, these representatives are involved in the operations and maintenance where the incident and have knowledge of the condition of the of the location and the equipment, work performed at the location, applicable operating and safety policies and procedures, communications with and concerning Plaintiff, and the relationship of the parties.  Please also see separate exhibit of deposition designations.

10.     Charles Anderson, 119 White Oak Estates, Roxie, Mississippi 39661, 601-870-7593.  Mr. Anderson was present at the MP153B platform on the day of the incident, and has experience regarding the platform and its operations.  Please also see separate exhibit of deposition designations.

11.     Randy Vincent, 400 Garland Street, Gueydan, Louisiana 70542, telephone unknown.  Mr. Vincent was present at the MP153B platform on the day of the incident, and has experience regarding the platform and its operations, his work history with Mr. Raicevic, and the other matters he testified to.  Please also see separate exhibit of deposition designations.

12.     Vanna L. Raymond, 5011 County Road 121, Rosharon, Texas 77583, telephone unknown.  Ms. Raymond works for Waukesha-Pearce and has knowledge regarding Mr. Raicevic's injuries, discussion with him, how the injuries were treated, Waukesha's investigation of Mr. Raicevic, and the matters testified to in her deposition. Please also see separate exhibit of deposition designations.

13.     Leslie Collum, Axiom Medical Consulting LLC, address and telephone unknown. Ms. Collum was a nurse case manager that participated in Mr. Raicevic's claim, and has knowledge regarding the matters testified to in her recent deposition.  Plaintiff will separately submit deposition designations for Ms. Collum after the transcript is ready.

14.     Kenneth Martin, c/o Mark Riley, The Glenn Armentor Law Corporation, 300 Stewart St., Lafayette, Louisiana 70501, 337-233-1471.  Mr. Martin has knowledge regarding work on Fieldwood platforms, injuries while responding to alarms at Fieldwood platforms, injuries due to leaking liquid on Fieldwood platforms, the habit of Fieldwood, Wood Group, and Island to deny that slip and falls occur or that leaks remained, and arguments made by Fieldwood, Wood Group, and Island that workers on Fieldwood platforms are independent contractors as opposed to borrowed servants.

**Defendants' Witnesses:**

Defendants' Witness List will be filed contemporaneously with the Joint Pre-Trial Order, but as a separate submission.

**Settlement**

Plaintiff made a settlement demand.  Shamrock has responded.  No other Defendant has responded. The case cannot reasonably be expected to settle.

**Trial**

Trial will be by jury.  The probably length of trial is 5 - 10 days.

**Additional Required Attachments**

Motions in Limine:        Plaintiff's Motion for Limine will be filed contemporaneously with the Joint Pre-Trial Order, but as a separate submission.  Defendants' Motion in Limine will be filed contemporaneously with the Joint Pre-Trial Order, but as a separate submission.

Venire Panel Questions:        Plaintiff's Venire Panel Questions will be filed contemporaneously with the Joint Pre-Trial Order, but as a separate submission.  Defendants' Venire Panel Questions will be filed contemporaneously with the Joint Pre-Trial Order, but as a separate submission.

Jury Questions:        Plaintiff and Defendants' Jury Questions are attached, with objections noted in the comments.

Deposition Designations:        Plaintiff's Deposition Designations will be filed contemporaneously with the Joint Pre-Trial Order, but as a separate submission. Defendants' Deposition Designations will be filed contemporaneously with the Joint Pre-Trial Order, but as a separate submission.

Memorandum of Law:        Plaintiff's Memorandum of Law will be filed contemporaneously with the Joint Pre-Trial Order, but as a separate submission.  Defendants' Memorandum of Law will be filed contemporaneously with the Joint Pre-Trial Order, but as a separate submission.

Approved as to form:

*/s/ John D. Sheppard*
_____
Attorney for Plaintiff

*/s/ Branch Sheppard*
_____
Attorney for Defendant Shamrock Management, LLC

*/s/ Bradley DeLuca*
_____
Attorneys for Defendant, Wood Group PSN Inc.

*/s/ Hal Broussard*

23

_____

Attorneys for Defendant, Island Operating Company LLC

*/s/ Randy Donato*

_____

Attorneys for Defendant Fieldwood Energy LLC