UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MILORAD RAICEVIC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:15-CV-327 |
| | § | |
| WOOD GROUP PSN, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

**COURT'S JURY INSTRUCTIONS AND CHARGE**

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and

1

determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendant in arriving at your verdict.

Do not let bias, prejudice, or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

In this case, the term "Plaintiff" refers to Milorad Raicevic.

The term "Fieldwood" refers to Fieldwood Energy LLC.

The term "Wood Group" refers to Wood Group PSN, Inc.

The term "Shamrock" refers to Shamrock Management LLC.

The term "Island Operating" refers to Island Operating Company Inc.

The term "Waukesha Pearce" refers to the Waukesha Pearce Industries, Inc.

Plaintiff, Milorad Raicevic, has the burden of proving his case by a preponderance of the credible evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. If you find that Mr. Raicevic has failed to prove any element of his claim by a preponderance of the evidence, then he may not recover on that claim.

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a

lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists.

As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.

Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence. These charts and summaries are not evidence or proof of any facts, unless the Court has admitted these charts and summaries into evidence. You should determine the facts from the evidence.

Certain items used during trial were illustrations or models. They were a party's or witness's illustration or model used to describe something involved in this trial. If your recollection of the evidence differs from the illustration or model, rely on your recollection.

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his

3

or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned these witnesses under oath. A court reporter was present and recorded the testimony. The questions and answers have been shown to you during this trial. This deposition testimony is entitled to the same consideration and weighed and otherwise

4

considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely on it.

During the trial, I may have asked a witness questions. Please do not assume that I have any opinion about the subject matter of my questions.

I will now instruct you on the applicable law.

The applicable law depends upon the nature of the plaintiff's claim. This case is what we call a "tort" case or a personal injury case, in which the plaintiff contends that he was injured, and that the Defendants were at fault in causing his injuries. He seeks an award of money as a result. The Defendants have a different view and have defended themselves against the plaintiff's claims.

Because this case involves allegations that conduct occurred or conditions existed off the shore of Louisiana, the Court applies Louisiana law to this case.

The basic law in Louisiana on this kind of case is found in various Articles of the Louisiana Civil Code.

The first is Article 2315. It states that:

> Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.

The word "fault" in this article is a key word. "Fault" means a type of conduct that a person should not have engaged in—he has acted as he should not have acted or he has failed to do something that he should have done. The law thus regards the conduct as being below the standard or measure which applies to the Defendants' activities.

The second applicable part of the Civil Code is found in in Articles 2317 and 2317.1, which deal with the custody of a thing, namely a compressor and compressor area on an offshore platform, which plaintiff claims were in the custody of the Defendants and as to which plaintiff claims the Defendants knew or should have known of the presence of a defect that caused harm to the plaintiff.

> We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.

The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

Under this standard, the plaintiff must prove that:

(a) the thing in question was in the custody of the defendant;

(b) the thing in question was defective, i.e., that it posed an unreasonable risk of harm;

(c) the defendant knew or, in the exercise of reasonable care, should have known of this defect;

(d) the damage could have been prevented by the exercise of reasonable care, and the defendant failed to exercise such reasonable care; and

(e) he was damaged as a result of this defect.

If plaintiff proves these five things by a preponderance of the evidence, the person in custody of the thing in question can escape liability only if he shows the harm was caused solely by the fault of the victim, by the fault of a third person, or by an irresistible force.

When I say that the thing in question had to be in the custody of the Defendants or a Defendant, I mean either that the Defendant was the owner of it, or was in a position to exercise supervision or control over it, and to draw benefit from it.

When I say that a defect in a thing creates an unreasonable risk of harm to others, I mean that the likelihood that harm might occur and the seriousness of such harm if it did happen outweighs the importance to society of the custody of the thing and the way the owner or custodians have chosen to maintain the thing under the circumstances. This means that you are to weigh the magnitude of the possible harm against the utility of custody of the thing under all the prevailing circumstances.

I've told you that in deciding whether the thing presented an unreasonable risk of harm, you must balance the likelihood and severity of the harm against the utility of the Defendants' ownership and maintenance of the thing. In making this balance, you should consider the utility of the entire thing, and not merely the utility of the condition or area of the thing which may have caused the harm. For example, a street will have utility, but a pothole in the street will not.

In determining the likelihood of harm in your deliberations, you should consider whether plaintiff is or should be familiar with the risk of harm inherent in the thing, even prior to his injury.

In deciding the utility of the ownership of the thing in question, and in particular the burden on the owner to take adequate precautions, you should consider the burden of taking such precautions in all similar situations, and not simply the burden of such precautions at the specific time and place of the accident.

The fact that a thing has a "flaw" or presents a hazard does not necessarily mean that it creates an unreasonable risk of harm. Plaintiff has to prove that there was an unreasonable risk of harm, according to the principles that I have explained to you.

One of the defenses which a person in custody of a thing which poses an unreasonable risk of harm can raise is that the injured person was himself at fault and thereby helped cause his own injury. If you conclude that the Plaintiff's conduct in this incident was below the standard of behavior we would normally expect of a reasonably prudent person and that his conduct helped to cause his injury, then you must assign a percentage of responsibility to the Plaintiff according to the instructions that I will give you.

The Defendants have to prove this defense and have to convince you by a preponderance of the evidence that the Plaintiff acted in the manner I have just described.

If the Defendants do prove that, then you should allocate responsibility in this matter between the Plaintiff and the Defendants by comparing the causal effect of Plaintiff's conduct with the causal effect of Defendants' activity or thing for which they are

responsible. The percentages of responsibility, if any, should be determined on the basis of the extent to which each of them contributed to the damages which Plaintiff suffered, if any. In other words, what percentage of Plaintiff's injuries was caused by his own conduct and what percentage was caused by defendant's activity or the thing of which he had custody?

The standards which the law applies to the Defendants' conduct will change according to the nature of their activity and the surrounding circumstances. These standards are sometimes set by the legislature in statutes, and sometimes they are set by the courts when the legislature has not provided a specific statute. Now that we are at the end of the trial, I'm going to tell you the standards which apply to the conduct of the Defendants in this particular suit, and you have to accept those standards. Your job is to decide if the plaintiff has proven by a preponderance of the evidence that the conduct of one or more of the Defendants fell below those standards. To put it briefly, you have to decide if the plaintiff has proven that the conduct of one or more of the Defendants was sub-standard and thus they are, in legal terms "at fault." In this particular case, the plaintiff says that one or more of the Defendants have committed the kind of fault that the law calls "negligence."

But this is only one of the parts of the plaintiff's case, and in order to succeed, the plaintiff must establish all essential parts of his case. Questions addressed to all of these parts of the case will be given to you in the "verdict form" that you will get at the end of these instructions and that you will take with you to fill out as a part of your deliberations. The other parts of the plaintiff's case are: (1) That the injury plaintiff suffered was, in fact, caused by the conduct of one or more of the Defendants; and (2) That there was actual damage to the plaintiff's person.

When I say that the injury must be shown to have been proximately caused by one or more of the Defendants' conduct, I don't mean that the law recognizes only one cause of an injury, consisting of only one factor or thing, or the conduct of only one person. On the contrary, a number of factors may operate at the same time, either independently or together, to cause injury or damage. You have to decide whether the plaintiff probably would not have suffered the injury or damage in the absence of one or more of the Defendants' conduct. If the plaintiff probably would have suffered injury no matter what one or more of the Defendants did, then you will have to decide that the

9

injury was not caused by one or more of the Defendants, and render a verdict for one or more of the Defendants. If, on the other hand, plaintiff probably would not have suffered injury in the absence of one or more of the Defendants' conduct, then you will have to decide that the Defendants' conduct did play a part in the plaintiff's injury and you will have to proceed to the next part of plaintiff's case.

The next part of the plaintiff's case that you have to consider is whether one or more of the Defendants' conduct was below the standard applicable to their activity, as I mentioned to you just a minute ago. In this case, the basic standard is that the Defendants must exercise the degree of care that we might reasonably expect from an ordinarily prudent person under the same or similar circumstances. The standard of care is not that of an extraordinarily cautious individual or an exceptionally skilled person, but that of a person of ordinary prudence. An ordinarily prudent person will avoid creating an unreasonable risk of harm. In deciding whether one or more of the Defendants violated this standard of conduct, you may weigh the likelihood that someone might have been injured by their conduct and the seriousness of that injury if it should occur against the importance to the community of what one or more of the Defendants were doing and the advisability of the way he was doing it under the circumstances.

To sum up this part, to find that one or more of the Defendants' conduct is sub-standard, you must find that an ordinarily prudent person under all of the surrounding circumstances would reasonably have foreseen that as a result of his conduct, some such injury as the plaintiff suffered would occur, and that one or more of the Defendants failed to do what an ordinarily prudent person would have done. You may find it helpful to ask yourself: "How would an ordinarily prudent person have acted or what precautions would he have taken if faced with similar conditions or circumstances?"

If you conclude that the Plaintiff has established the first two elements of his case, then you must determine whether Defendants have proved that the Plaintiff has failed to conduct himself in accordance with the standard expected of him, and has thereby contributed to his own injury. It is the law of Louisiana that the recovery of an injured person who has contributed to his own injury by his own sub-standard conduct must be reduced by the percentage of fault attributable to him.

In this case, the standard applicable to the plaintiff's conduct is the requirement that he exercise that degree of care which we might reasonably expect a person to exercise for his own safety and protection. On this issue Defendants have the burden of proof. In other words, Defendants have the burden of establishing, by a preponderance of the evidence, that the plaintiff failed to conform to that standard and by that failure contributed to his own injury. If Defendants convinces you of that, then you must assign a percentage of fault to the plaintiff's conduct according to the instructions that I will give you.

In deciding the question of plaintiff's fault, as it is called in the law, you may ask yourselves this question: "Should the plaintiff as an ordinarily prudent person, under all the circumstances surrounding his conduct, have reasonably foreseen some such injury as he suffered as a result of his conduct, and did he fail to exercise reasonable care to avoid such injury to himself?"

If the Defendants do not convince you that the plaintiff was also at fault, and the plaintiff has otherwise proven his case by a preponderance of the evidence, then you should return a verdict for the plaintiff without assigning any percentage of fault to him.

If you conclude that one or more of the Defendants or the plaintiff were negligent, and that the negligence of one or more of the Defendants or the plaintiff was a proximate cause of the accident and plaintiff's injuries, then you must assign percentages of fault to each one. In determining those percentages, you may consider both the nature of the negligent conduct and the extent of the causal relation between the conduct and plaintiff's injuries.

When I say "the nature of the negligent conduct," I mean that you may consider: (1) whether the conduct resulted from inadvertence or rather involved an awareness of the danger involved; (2) how great the risk created by the person's conduct was; (3) the importance of what was sought by the conduct; (4) the physical and mental capacities of the person, either ordinary or perhaps superior or inferior; and (5) any extenuating circumstances which might have required that party to act in haste, without proper thought.

11

When I say "the extent of the causal relation" between the conduct and the injuries, I mean that you may consider the extent to which that party's conduct contributed to the happening of the accident and plaintiff's injuries.

Louisiana law requires that you divide the total responsibility for this incident among all those who were proven to be involved in it whether they are actually Defendants to this suit or not. You should do this by assigning percentages of fault to the various involved persons which will total 100%. You are free to assign whatever percentage you feel appropriate, and you should do so by answering the following questions, which will be provided to you on a special verdict form.

If you decide that the plaintiff has established the other elements of his case by a preponderance of the evidence, and that Defendants have failed to establish a defense which would prevent plaintiff from recovering an award for his injuries, you must decide the question of whether there has been damage to his person and if so, the amount of that damage.

In this regard, I recall to your attention the words of Article 2315 of the Louisiana Civil Code:

> Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it.

Article 2315, and Louisiana law, suggest simple reparation, a just and adequate compensation for injuries. It suggests no idea of revenge or punishment.

Accordingly, Louisiana law does not permit the awarding of damages to punish the Defendants, or make an example of them to prevent other accidents, and you should include no such amount in your award. Your award should be designed to fully and fairly compensate the plaintiff for his injury, if you find one has occurred, and should not go beyond such reparation.

The law recognizes the difficulty of translating personal injuries into a dollars and cents figure, but that is what must be done. You must arrive at a figure that will fairly and adequately compensate the plaintiff for damages he has already suffered, and that he will in all likelihood suffer in the future. In estimating such damages, you may take into consideration the following elements:

(1) physical injury suffered;
(2) pain and suffering, both physical and mental;
(3) permanent disability, if any;
(4) loss of earnings, if any, both past and future;
(5) medical expenses, both past and future.

Like other parts of the plaintiff's case, these damages must be established by a preponderance of the evidence. This means, on the one hand, that you are not entitled to award speculative damages for injuries which you think the plaintiff might have suffered or might suffer in the future. On the other hand, it means that you may make an effort to reasonably approximate the damages which plaintiff has proved are more probable than not, even though they cannot be computed with mathematical certainty. You may, if you wish, take into account the decreasing value of the dollar in today's market.

13

Statements of any attorney in this case as to his estimate of dollar amounts to be awarded for any claims such as pain and suffering or similar claims, are not evidence and you should disregard them. The determination of damages is solely your function, and your decision must be based upon competent evidence, and not upon figures suggested by an attorney.

As I have mentioned to you, there is no practical way to introduce evidence as to the general damages which plaintiff claims for pain and suffering and for mental distress. There is no precise standard to fix these damages or assign some kind of value to them. Rather, your job is to determine an amount that will be fair and just on the basis of evidence of plaintiff's injury and treatment that you have heard, and that will fairly compensate plaintiff for any damage he may have suffered.

When it is shown that a plaintiff is suffering from ailments before an accident, and it is alleged that the accident aggravated those previous disorders and caused suffering and disability, you must determine the extent to which the accident caused such suffering and the extent to which the such suffering was related to and caused by the previous condition, for in assessing damages you may only consider that extent of suffering directly caused by the accident. The Defendants are not responsible for suffering caused by ailments which existed before the accident.

In your consideration of the items of damages, you should bear in mind that under the law, the one liable or responsible for an accident must take the injured person as he or she finds him or her, and is responsible for all the natural and probable consequences of his or her wrong, even though they are more serious or harmful by reason of a pre-existing condition, physical defect or weakness of the injured person. If the accident results in aggravation of a previous condition of disability or of pain of the injured person, the one responsible is liable to the extent of the aggravation of the pre-existing condition and for any new injuries resulting from the accident.

However, Plaintiff must prove:

1.    The prior existing condition; and
2.    The extent of the aggravation.

14

If you find that the plaintiff would have faced this aggravation of his condition whether this incident happened or not, then the plaintiff is not entitled to damages for that portion of his claim, because the Defendants are not responsible for the normal and natural results of the plaintiff's prior condition.

In reaching a verdict on the question of damages, I caution you not to include anything for the payment of court costs and attorney fees; the law does not consider these as damages suffered by the plaintiff. Also, any amount which you might award to the plaintiff is not income within the meaning of the income tax laws. If you decide to make an award, follow the instructions I have given you, and do not add or subtract from that award on account of federal or state income taxes. In other words, if you find that the plaintiff is entitled to damages, the amount which you award should be the sum that you think will fully and fairly compensate the plaintiff for his injuries, without regard to what he may pay his attorney or the amount that you might think would be paid in income taxes.

Finally, let me say that the fact that I have given you these statements about the law of damages does not in any way imply or suggest that I feel or do not feel that any damages are due in this case. Whether or not damages are due is solely for you to determine.

In determining any award that you might make for past wage loss, you should consider the evidence presented to you on that issue. Any award which you may make should be based on plaintiff's gross income, that is his earnings before deductions for income taxes, social security and so forth—not on what we generally call his "take-home pay."

The amount of damages for an item such as loss of future wages is necessarily speculative and cannot be calculated with mathematical certainty. However, if you feel that such damages should be awarded, you should exercise your discretion in considering all the circumstances and award an amount that is just to both sides and not unduly oppressive to either side.

In determining such an award, you may consider plaintiff's physical condition before and after this incident, his work record, his earnings in prior years, the probability or

15

improbability that he would have earned similar amounts in the remainder of his work life, and similar factors.

Since, if you make such an award, plaintiff would be receiving today sums of money that otherwise he would only receive over a number of years in the future, the law requires that you "discount" or reduce to its present value the amount of the future loss you might otherwise award. In simple terms, this is a reduction by the amount of money, or interest, which this smaller sum of money will earn for plaintiff over the period of time in which he would have been earning these future wages. You should list this "discounted" figure as your award for future wage loss, if you make such an award. In determining this "discount" factor, you may consider the evidence of the experts who have testified on this issue.

In determining any award that you might make for past or future medical expenses, you should consider the evidence to decide the reasonable value or expense of medical, nursing and hospital care and treatment which was or will be reasonable and necessary for plaintiff's condition.

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to re-examine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select

a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Please do not write on or mark on the exhibits.

Your verdict must be unanimous. After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

After I read the special verdict form to you, you may proceed to the jury room to begin your deliberations.


SIGNED at Galveston, Texas on January 2 5 , 2018.


GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MILORAD RAICEVIC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:15-CV-327 |
| | § | |
| WOOD GROUP PSN, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## **SPECIAL VERDICT FORM**

### QUESTION NUMBER 1

Were any of the following entities negligent?

ANSWER: "YES" or "NO":

| | | |
|---|---|---|
| a. | Wood Group | NO |
| b. | Fieldwood | YES |
| c. | Shamrock | NO |
| d. | Island Operating | No |
| e. | Waukesha Pearce | NO |

*If you answered Question No. 1 "No" for all listed parties, do not answer any further questions.*

*If you answered Question No. 1 "Yes" for any listed party, proceed to Question No. 2.*

18

QUESTION NUMBER 2

If you answered "Yes" to Question 1 for any party listed below, do you find that party's negligence was a proximate cause of the accident?

ANSWER:  "YES" or "NO":

| | | |
|---|---|---|
| a. | Wood Group | NO |
| b. | Fieldwood | YES |
| c. | Shamrock | No |
| d. | Island Operating | No |
| e. | Waukesha Pearce | NO |

*If you answered Question No. 2 "No" for each party for whom you answered "Yes" in Question 1, do not answer any further questions.*

*If you answered Question No. 2 "Yes" for any party, proceed to Question No. 3.*

QUESTION NUMBER 3

Was Milorad Raicevic negligent?

ANSWER:  "YES" or "NO": YES

*If you answered Question No. 3 "Yes", proceed to Question No. 4.*

*If you answered Question No. 3 "No", proceed to Question No. 5.*

QUESTION NUMBER 4

Was the negligence of Milorad Raicevic a proximate cause of the accident?

ANSWER: "YES" or "NO": _YES_

*If you answered Question No. 4 "Yes", proceed to Question No. 5.*

*If you answered Question No. 4 "No", proceed to Question No. 5.*

QUESTION NUMBER 5

Please state the percentage of negligence, if any, attributable to each of the parties listed below, if you answered "Yes" for that party in Question No. 2 or Question No. 4.

| | | | |
|---|---|---|---|
| a. | Milorad Raicevic | _50_ | % |
| b. | Wood Group | _____ | % |
| c. | Fieldwood | _50_ | % |
| d. | Shamrock | _____ | % |
| e | Island Operating | _____ | % |
| f. | Waukesha Pearce | _____ | % |

Total:   100%

The percentages you find must total 100 percent. The percentages must be expressed in whole numbers. The percentage of responsibility attributable to a person is not necessarily measured by the number of acts or omissions.

*Move on to the next question.*

20

*Answer Question No. 6 if you answered "Yes" to <u>any</u> of Fieldwood, Island Operating, and/or Wood Group in Question No. 2.*

*Otherwise, do not answer any further questions.*

### QUESTION NUMBER 6

What sum of money, if paid now in cash, would fairly and reasonably compensate Milorad Raicevic for his injuries, if any, that resulted from the occurrence or injury in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

Answer separately, in dollars and cents, for damages, if any. Do not reduce the amounts, if any, in your answers because of the negligence, if any, of Milorad Raicevic.

a. Medical care expenses incurred in the past.

Answer: $ 155,000

b. Medical care expenses that, in reasonable probability, Milorad Raicevic, will incur in the future.

Answer: $ 506,000

c. Loss of earning capacity sustained in the past.

Answer: $ 306,000

d. Loss of earning capacity that, in reasonable probability, Milorad Raicevic, will sustain in the future.

Answer: $ 400,000

e. Pain and suffering sustained in the past.

Answer: _____ $ 25,000 _____

f. Pain and suffering that, in reasonable probability, Milorad Raicevic, will sustain in the future.

Answer: _____ $ 50,000 _____

g. Mental anguish sustained in the past.

Answer: _____ Ø _____

h. Mental anguish that, in reasonable probability, Milorad Raicevic, will sustain in the future.

Answer: _____ Ø _____

i. Physical disfigurement sustained in the past.

Answer: _____ $ 25,000 _____

j. Physical disfigurement that, in reasonable probability, Milorad Raicevic, will sustain in the future.

Answer: _____ $ 25,000 _____

k. Loss of enjoyment of life in the past.

Answer: _____ $ 30,000 _____

l. Loss of enjoyment of life that, in reasonable probability, Milorad Raicevic will sustain in the future.

Answer: _____ $ 30,000 _____

*If you answered "Yes" to <u>any</u> of Fieldwood, Island Operating, and/or Wood Group in Question No. 2, proceed to the following questions.*

*Otherwise, do not answer any further questions.*

For the following questions, you must determine whether a worker was a "borrowed employee" of Fieldwood. Defendants have the burden of establishing "borrowed employee" status by a preponderance of the evidence. To establish something by a preponderance of the evidence means to prove something is more likely so than not so.

## QUESTION 7

### Raicevic : Fieldwood

1. Do you find that Fieldwood had control over Milorad Raicevic and the work he was performing, beyond mere suggestion of details or cooperation?

   ANSWER: "YES" or "NO":  ___NO___

2. Was Milorad Raicevic performing Fieldwood's work?

   ANSWER: "YES" or "NO":  ___YES___

3. Was there an agreement, understanding, or meeting of the minds between Waukesha-Pearce Industries and Fieldwood?

   ANSWER: "YES" or "NO":  ___YES___

4. Did Milorad Raicevic acquiesce in the new work situation?

   ANSWER: "YES" or "NO":  ___YES___

5.  Did Waukesha-Pearce Industries terminate its relationship with Milorad Raicevic, prior to the occurrence?

ANSWER: "YES" or "NO":  NO

6.  Did Fieldwood furnish the tools and place for Milorad Raicevic's performance?

ANSWER: "YES" or "NO":  YES

7.  Did Milorad Raicevic work for Fieldwood for a considerable length of time?

ANSWER: "YES" or "NO":  NO

8.  Did Fieldwood have the right to discharge the Milorad Raicevic?

ANSWER: "YES" or "NO":  NO

9.  Did Fieldwood have the obligation pay Milorad Raicevic?

ANSWER: "YES" or "NO":  NO

*If you answered "Yes" to Island Operating and/or Wood Group in Question No. 2, proceed to the following questions.*

*Otherwise, do not answer any further questions.*

QUESTION 8

Island Operating : Fieldwood

1. Do you find that Fieldwood had control over Island Operating's workers and the work they were performing, beyond mere suggestion of details or cooperation?

   ANSWER: "YES" or "NO": _____

2. Were Island Operating's workers performing Fieldwood's work?

   ANSWER: "YES" or "NO": _____

3. Was there an agreement, understanding, or meeting of the minds between Island Operating and Fieldwood?

   ANSWER: "YES" or "NO": _____

4. Did Island Operating's workers acquiesce in the new work situation?

   ANSWER: "YES" or "NO": _____

5. Did Island Operating terminate its relationship with Island Operating's workers, prior to the occurrence?

   ANSWER: "YES" or "NO": _____

6. Did Fieldwood furnish the tools and place for Island Operating's workers' performance?

   ANSWER: "YES" or "NO": _____

7. Did Island Operating's workers work for Fieldwood for a considerable length of time?

ANSWER: "YES" or "NO": _____

8. Did Fieldwood have the right to discharge Island Operating's workers?

ANSWER: "YES" or "NO": _____

9. Did Fieldwood have the obligation pay Island Operating's workers?

ANSWER: "YES" or "NO": _____

*If you answered "Yes" to Wood Group in Question No. 2, proceed to the following question.*

*Otherwise, do not answer any further questions.*

QUESTION 9

Wood Group : Fieldwood

1.  Do you find that Fieldwood had control over Wood Group's workers and the work they were performing, beyond mere suggestion of details or cooperation?

    ANSWER: "YES" or "NO": _____

2.  Were Wood Group's workers performing Fieldwood's work?

    ANSWER: "YES" or "NO": _____

3.  Was there an agreement, understanding, or meeting of the minds between Wood Group and Fieldwood?

    ANSWER: "YES" or "NO": _____

4.  Did Wood Group's workers acquiesce in the new work situation?

    ANSWER: "YES" or "NO": _____

5.  Did Wood Group terminate its relationship with Wood Group's workers, prior to the occurrence?

    ANSWER: "YES" or "NO": _____

6.  Did Fieldwood furnish the tools and place for Wood Group's workers' performance?

    ANSWER: "YES" or "NO": _____

27

7.  Did Wood Group's workers work for Fieldwood for a considerable length of time?

    ANSWER: "YES" or "NO": _____

8.  Did Fieldwood have the right to discharge Wood Group's workers?

    ANSWER: "YES" or "NO": _____

9.  Did Fieldwood have the obligation pay Wood Group's workers?

    ANSWER: "YES" or "NO": _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MILORAD RAICEVIC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:15-CV-327 |
| | § | |
| WOOD GROUP PSN, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## VERDICT OF THE JURY

We, the Jury, have unanimously agreed to the answers to the foregoing questions

and return such answers in open court and, under the instructions of the Court, as our

verdict in this cause.

_____          ___1-26-18___

FOREPERSON                                                    DATE