UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| MILORAD RAICEVIC, | § |
| | § |
| Plaintiff, | § |
| VS. | § CIVIL ACTION NO. 3:15-CV-327 |
| | § |
| WOOD GROUP PSN, INC., *et al.*, | § |
| | § |
| Defendants. | § |

## MEMORANDUM OPINION AND ORDER

This personal injury case was tried to a jury, which found both the plaintiff and one of the defendants, Fieldwood Energy, LLC ("Fieldwood"), negligent (Dkt. 223 at p. 20). Before the case was submitted to the jury, Fieldwood moved for judgment in its favor as a matter of law under Federal Rule of Civil Procedure 50 (Dkt. 206). The Court has considered the jury's findings, the record in this case, the parties' extensive briefing, and the applicable law and will render judgment for Fieldwood and its co-defendants[1] in accordance with the jury's verdict. In light of the rendition of that judgment and the analysis below, Fieldwood's Rule 50 motion is **DENIED** as moot.

I.  **BACKGROUND**

The plaintiff, Milorad Raicevic ("Raicevic"), argued at trial that he was injured when he slipped and fell while working as a production technician on a fixed offshore drilling platform owned by Fieldwood. At the time of his injury, Raicevic was working on Fieldwood's platform pursuant to a master services contract between his employer,

---

[1] The jury found that Fieldwood's co-defendants were not negligent (Dkt. 223 at p. 18).

Waukesha Pearce ("Waukesha"), and Fieldwood. Fieldwood, though concededly not Raicevic's nominal employer, argued at trial (and continues to argue in its Rule 50 motion and post-trial briefing) that Raicevic was its "borrowed employee" when he was hurt and that, as a result, Raicevic's tort lawsuit against Fieldwood is barred under the exclusive-remedy provisions of the Longshore and Harbor Workers' Compensation Act ("LHWCA"). *See* 33 U.S.C. § 905(a). The Court requested a finding from the jury on each of the nine factors used by courts in the Fifth Circuit to determine whether a person should be considered a borrowed employee under the LHWCA. *See* Fed. R. Civ. P. 49(a). In light of those findings, the Court must now decide whether Raicevic was Fieldwood's borrowed employee at the time of his injury. *See Brown v. Union Oil Co. of Cal.*, 984 F.2d 674, 677–79 (5th Cir. 1993) (explaining that, even when a case involves factual disputes on the issue of borrowed employee status and requires findings by a factfinder, "[t]he issue of borrowed employee status is a matter of law for the district court to determine") (quotation marks omitted). The Court concludes that he was.

## II. LHWCA COVERAGE

As a preliminary matter, the Court must briefly address the argument raised by Raicevic in his borrowed-employee briefing that Fieldwood failed to "secure payment of compensation" within the meaning of the LHWCA and therefore cannot assert the borrowed-employee defense (Dkt. 299 at p. 40). Under Federal Rule of Civil Procedure 49(a)(3), the Court may make a fact finding on this issue, and the Court disagrees with Raicevic.

The LHWCA's exclusive-remedy provisions give employers what is commonly called a "workers' comp bar" to tort liability; but, like many such statutory comp bars,[2] the LHWCA's provisions may only be invoked by employers who elect to obtain workers' compensation insurance coverage. Specifically, the LHWCA requires employers seeking the protection of its comp bar to either: (1) purchase LHWCA workers' compensation insurance from a commercial carrier that has been authorized by the Department of Labor to provide that insurance; or (2) receive permission from the Department of Labor to self-insure. *See* 33 U.S.C. §§ 905(a), 932; *Langfitt v. Federal Marine Terminals, Inc.*, 647 F.3d 1116, 1119 n. 5 (11th Cir. 2011). In the case of a borrowed employee, the borrowing employer may invoke the comp bar but is liable for the borrowed employee's compensation benefits; and the employee's nominal employer may seek reimbursement from the borrowing employer for any compensation benefit payments the nominal employer has made. *Total Marine Servs., Inc. v. Dir., Office of Worker's Comp. Programs, U.S. Dep't of Labor*, 87 F.3d 774, 777–79 (5th Cir. 1996).

As discussed in greater detail below, the Court submitted the borrowed-employee issue to the jury by requesting nine separate fact findings using the special-verdict procedure authorized by Federal Rule of Civil Procedure 49(a)(1). However, the Court did not submit to the jury any question regarding whether Fieldwood purchased workers' compensation insurance or permissibly self-insured, and Raicevic neither objected to the omission nor requested that the Court submit any such questions to the jury. To the contrary, Raicevic himself made a motion in limine, which the Court granted, barring

---

[2] *See, e.g.,* Tex. Lab. Code § 406.003.

discussion of workers' compensation insurance (Dkt. 161 at pp. 6, 9; Dkt. 297-11 at p. 6). Moreover, in the joint pretrial order, the parties did not list among their contested issues the questions of whether Fieldwood purchased workers' compensation insurance or permissibly self-insured (Dkt. 134). Under Rule 49(a)(3), therefore, the Court may make fact findings on the issues of whether Fieldwood purchased workers' compensation insurance or permissibly self-insured. Fed. R. Civ. P. 49(a)(3); *see also, e.g., Taherzadeh v. Clements*, 781 F.2d 1093, 1100 (5th Cir. 1986) ("In the absence of a demand by the parties that an issue be submitted, and if such issue is omitted, [Rule 49(a)] allows the Court to make its own findings on the omitted issue.").

The Court finds that Fieldwood secured payment of compensation under the LHWCA by purchasing an LHWCA workers' compensation insurance policy from American Zurich Insurance Company. Fieldwood's borrowed-employee briefing includes a copy of its workers' compensation insurance policy that is attached to a business records affidavit sworn out by its vice president of risk management (Dkt. 297-4). The policy was in force at the time of Raicevic's injury and was written by American Zurich Insurance Company. The Court takes judicial notice under Federal Rule of Evidence 201 that American Zurich Insurance Company has been authorized by the Department of Labor to provide LHWCA workers' compensation insurance since 2002. *See* www.dol.gov/owcp/dlhwc/lscarrier.htm.

Since it secured payment of compensation within the meaning of the LHWCA, Fieldwood may invoke the borrowed-employee defense and the LHWCA's exclusive-remedy provisions.

## III.    BORROWED EMPLOYEE STATUS UNDER THE LHWCA

Raicevic sued Fieldwood and the other defendants under the Outer Continental Shelf Lands Act ("OCSLA"). OCSLA provides that Louisiana tort law applies here (to the extent that it is not inconsistent with federal laws and regulations) because the platform on which Raicevic was injured would have been within Louisiana's boundaries if those boundaries were extended seaward to the outer margin of the outer Continental Shelf. *See* 43 U.S.C. § 1333(a)(2)(A). However, OCSLA also provides that the LHWCA applies here because the platform on which Raicevic was injured was conducting operations "for the purpose of exploring for, developing, removing, or transporting by pipeline the natural resources . . . of the subsoil and seabed of the outer Continental Shelf," *see* 43 U.S.C. § 1333(b), and "[u]nder the LHWCA, a company that can establish that an injured worker is its borrowed employee only has to pay workers' compensation; it has no tort liability." *Santacruz v. Hertz Equipment*, No. 3:12-CV-348, 2015 WL 2340330, at *2 (S.D. Tex. Apr. 27, 2015) (Costa, J.); *see also Total Marine*, 87 F.3d at 777. In other words, Louisiana tort law provides any tort remedies that Raicevic would have against Fieldwood; but the Fifth Circuit's maritime borrowed-employee jurisprudence controls the inquiry of whether Raicevic can sue Fieldwood in tort in the first place.

As the Fifth Circuit has acknowledged, "[s]ome confusion has arisen from the application of the 'borrowed employee' doctrine to the tort immunity under LHWCA context." *Melancon v. Amoco Production Co.*, 834 F.2d 1238, 1245 n. 12 (5th Cir. 1988). Fifty years ago, the Fifth Circuit set out the following nine factors for district courts to

use as guideposts in admiralty cases when determining whether a person nominally employed by one employer should be considered the borrowed employee of another: (1) who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation; (2) whose work is being performed by the employee; (3) whether an agreement, understanding, or meeting of the minds exists between the nominal and the borrowing employer; (4) whether the employee acquiesced in the new work situation; (5) whether the original employer terminated his relationship with the employee; (6) who furnished the employee's tools and place of performance; (7) whether the employee's new employment was over a considerable length of time; (8) whether the nominal or the borrowing employer had the right to discharge the employee; and (9) whether the nominal or the borrowing employer had the obligation to pay the employee. *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 312–13 (5th Cir. 1969). *Ruiz* provided no guidance regarding how to weigh or apply these factors; rather, the opinion noted that "no one of these factors, or any combination of them, is decisive, and no fixed test is used to determine the existence of a borrowed-servant relationship[.]" *Id*. at 312.

Further complicating this analysis is the fact that courts in the Fifth Circuit use the same *Ruiz* factors whether they are deciding a borrowed-employee issue in the maritime vicarious liability context (where a borrowed-employee finding imputes tort liability for the borrowed employee's actions to the borrowing employer) or the LHWCA context (where a borrowed-employee finding bars a tort lawsuit by the borrowed employee against the borrowing employer). *Compare Johnson v. GlobalSantaFe Offshore Services, Inc.*, 799 F.3d 317, 322 (5th Cir. 2015) (explaining use of the *Ruiz* factors in the

admiralty context to determine whether an employee was "borrowed" so as to make the allegedly borrowing employer vicariously liable for his actions) *with Melancon*, 834 F.2d at 1243–46 (explaining use of the *Ruiz* factors in the LHWCA context to determine whether an employee was "borrowed" so as to shield the allegedly borrowing employer from his tort lawsuit). And the different legal contexts naturally impart different weight to different factors—for instance, "the 'control' factor is by a good measure the most significant in the vicarious liability context but is de-emphasized for the LHWCA." *Santacruz*, 2015 WL 2340330 at *2 (citations and some quotation marks omitted). Fortunately, post-*Ruiz* Fifth Circuit LHWCA opinions have clarified and distilled the *Ruiz* test, as this passage from the opinion in *Gaudet v. Exxon Corp.*, 562 F.2d 351 (5th Cir. 1977), well illustrates:

> Of the constellation of *Ruiz* factors that may decide the issue then, certain factors are most pertinent when the borrowed employee doctrine is used as a defense to common law liability in the LHWCA context. The principal focus within the *Ruiz* test in this case should therefore be: (1) was the second employer itself responsible for the working conditions experienced by the employee, and the risks inherent therein and, (2) was the employment with the new employer of such duration that the employee could be reasonably presumed to have evaluated the risks of the work situation and acquiesced thereto? The first test, of course, parallels the *Ruiz* tests of which employer furnishes tools and place of performance and whether the first employer has terminated his relationship with the employee. The second parallels the tests of employment over a considerable length of time and agreement or acquiescence by the employee. Other factors in *Ruiz* may of course be helpful to the court in evaluating whether the LHWCA should apply in a given case, but no others should be considered essential.
> *Gaudet*, 562 F.2d at 357 (italics added); *see also Melancon*, 834 F.2d at 1245 n. 12 ("[T]his Court in *Gaudet* stressed the importance of the fourth, fifth, sixth, and seventh factors under *Ruiz* [in LHWCA cases.]").

With *Ruiz* and its progeny in mind, the Court will now turn to the jury's findings in this case.

**IV.   THE JURY'S FINDINGS ON THE BORROWED-EMPLOYEE FACTORS**

In its answers to the Court's questions on the *Ruiz* factors, the jury in this case found that: (1) Fieldwood did not have control over Raicevic and the work he was performing beyond mere suggestion of details or cooperation; (2) Raicevic was performing Fieldwood's work; (3) there was an agreement, understanding, or meeting of the minds between Waukesha and Fieldwood; (4) Raicevic acquiesced in the new work situation; (5) Waukesha did not terminate its relationship with Raicevic prior to the incident made the basis of this lawsuit; (6) Fieldwood furnished the tools and place for Raicevic's performance; (7) Raicevic did not work for Fieldwood for a considerable length of time; (8) Fieldwood did not have the right to discharge Raicevic; and (9) Fieldwood did not have the obligation to pay Raicevic (Dkt. 223 at pp. 23–24). Critically, the jury specifically found that Raicevic acquiesced to perform Fieldwood's work to Fieldwood's specifications[3] using Fieldwood's tools on Fieldwood's platform. To distill these findings as discussed in *Gaudet*, Fieldwood was "responsible for the working conditions experienced by [Raicevic], and the risks inherent therein[;]" and Raicevic "evaluated the risks of the work situation and acquiesced thereto[.]" *Gaudet*, 562 F.2d at

---

[3] The master services contract between Waukesha and Fieldwood required Waukesha employees to perform Fieldwood's work "in strict conformity with the specifications and requirements contained in the job order" submitted by Fieldwood (Dkt. 297-13 at p. 4).

357. No other factors need, or even should, be considered essential. *Id*. Raicevic was Fieldwood's borrowed employee for LHWCA purposes.

The Court notes that it is not, as Fieldwood has requested (Dkt. 297 at p. 8), disregarding any of the jury's findings. The jury's finding that Fieldwood did not have control over Raicevic and the work he was performing beyond mere suggestion of details or cooperation does not contradict the jury's other findings or the Court's legal conclusion. *Ruiz*'s "control" factor, though critical when establishing vicarious liability, is "de-emphasized for the LHWCA." *Santacruz*, 2015 WL 2340330 at *2 (citation and quotation marks omitted). While a finding that Fieldwood exercised enough control over Raicevic to make Fieldwood vicariously liable for Raicevic's actions would, under the Court's reading of the relevant caselaw, have been sufficient to allow Fieldwood to invoke the LHWCA's comp bar, it was not necessary. Similarly, the finding that Raicevic did not work for Fieldwood for a considerable length of time does not contradict the finding that Raicevic acquiesced to his work situation. Although a long-term relationship supports a finding of borrowed employment, "the converse is not true." *Capps v. N.L. Baroid-NL Industries, Inc.*, 784 F.2d 615, 618 (5th Cir. 1986). Under the guidance provided by the Fifth Circuit, the jury's findings are entirely consistent with the conclusion that Raicevic was Fieldwood's borrowed employee for LHWCA purposes, although these same findings might not support the conclusion that Fieldwood could be held vicariously liable for Raicevic's actions.

## V.  CONCLUSION

For the reasons explained above, the Court holds, in accordance with the jury's findings and the Court's own finding on LHWCA insurance coverage, that Fieldwood may invoke the exclusive-remedy provisions of the LHWCA to bar Raicevic's tort action against it. Since the jury found that Fieldwood's co-defendants were not negligent, the Court renders judgment for the defendants in this case. Fieldwood's motion for judgment in its favor as a matter of law under Federal Rule of Civil Procedure 50 (Dkt. 206) is **DENIED** as moot.

The Court will issue a separate final judgment.

SIGNED at Galveston, Texas, this 14th day of February, 2019.

*George C. Hanks Jr.*
George C. Hanks Jr.
United States District Judge